IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Dale M. Farmer | : | |
| | : | Case No. C-1-05-100 |
| Plaintiff | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING MOTION TO |
| General Mills Cereals Properties, LLC, *et al.* | : | DISMISS, OR, IN THE ALTERNATIVE, |
| | : | FOR SUMMARY JUDGMENT |
| Defendant | : | |

This matter comes before the Court on Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment (doc. #6).  In this action, Plaintiff asserts claims for breach of contract and defamation against the Defendants, his former employer, for refusing to pay him promised severance benefits and accusing him of theft.  Defendants contend that Plaintiff's state law-based claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and that the claims must be dismissed because Plaintiff has failed to exhaust his remedies under the applicable collective bargaining agreement.  For the reasons that follow, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's claims.

I.      BACKGROUND

Plaintiff Dale M. Farmer was employed by Defendants General Mills Cereals Properties, LLC, and/or General Mills Cereals, LLC, and/or General Mills Operations, Inc., and/or General Mills Sales, Inc. (hereinafter, individually and/or collectively, "General Mills" or "the Company") at its Cincinnati, Ohio location for more than forty years until November 30, 2004. (Complaint ¶ 4; Farmer aff. ¶ 3.)  During his employment with General Mills, Farmer was represented by the Bakery, Confectionary, Tobacco Workers and Grain Millers (AFL-CIO),

1

Local Union No. 256 G ("the Union"). (Farmer aff. ¶ 4.) The terms and conditions of his employment were governed by a collective bargaining agreement between the Union and General Mills ("the CBA"). (Farmer aff. ¶ 5.)

The CBA contains a multi-step grievance procedure that includes as the final step a hearing before an impartial arbitrator. (CBA § 6.)[1] The CBA also sets forth, *inter alia*, seniority provisions, severance pay provisions, and work rules. (Id. §§ 10, 18, 20.) Stealing from the Company or an employee is prohibited by the work rules in the CBA. (Id. § 20.)

On August 2, 2004, General Mills and the Union entered into a separate Restructuring Agreement to provide severance benefits to certain unionized employees to be affected by the layoffs at the Cincinnati plant which General Mills had announced. (Masternak aff. ¶ 5.) The Restructuring Agreement provides severance benefits at a rate of "the highest of: 1) the severance pay formula in Section 18(2) of the labor agreement using 2003 W-2 earnings; 2) five hundred dollars ($500.00) per year of service; or 3) two thousand, five hundred dollars ($2,500.00)." (Restr. Agrmt. ¶ 4.)[2] In order to receive severance benefits, employees had to "[1] sign severance agreements (waiver of claims), and [2] end their seniority and recall rights, and [3] end their employment with General Mills." (Id. ¶ 6). The Restructuring Agreement also provides that the decision to grant an employee's request for early release with severance was in the Company's sole discretion, and that such decisions were "not subject to the grievance procedure." (Id. ¶ 7.) Likewise, decisions regarding the hiring of laid off employees at other General Mills plants were to be made solely by the Company and were "not subject to the

---

[1] A copy of the CBA is attached as exhibit A to Farmer's affidavit.

[2] A copy of the Restructuring Agreement is attached to the Complaint.

2

grievance/arbitration procedure." (Id. ¶ 9.) The Restructuring Agreement does not provide its own grievance or grievance/ arbitration procedure.

Farmer was one of the employees eligible to accept the severance benefits under the Restructuring Agreement. (Farmer aff. ¶ 7.) On August 12, 2004, he signed a voluntary resignation statement effective November 30, 2004. (Id.; Resign. Stmt.)[3] In the resignation statement, Farmer agreed to (1) voluntarily resign his employment with General Mills and (2) waive his rights to recall and seniority under the CBA. (Resign. Stmt.) In exchange, Farmer was to receive information from General Mills about "a severance program as agreed to by the Company and the Union in effects bargaining." (Id.) He then was to be given forty-five days to consider and accept the package by signing a release agreement. (Id.) Finally, Farmer agreed in the resignation statement that his resignation was not revocable even if he chose not to accept the severance package. (Id.)

Farmer then worked through his last day of employment on November 30, 2004. (Farmer aff. ¶ 9.) His membership in the Union ended on that day as well. (Rodgers aff. ¶ 3.) Farmer expected to receive $52,000.00 under the terms of the Restructuring Agreement. (Farmer aff. ¶ 9.) However, General Mills did not provide Farmer with a release agreement to sign and did not pay him severance benefits. (Id. ¶ 10.)

In December 2004, General Mills began an investigation into whether Farmer had committed acts of theft and removed certain equipment from company property. (Masternak aff. ¶ 7.) On December 17, 2004, General Mills sent Farmer a letter stating that the severance offer made to Farmer on November 30, 2004 was being "withdrawn pending the investigation of

---

[3] A copy of the Resignation Statement is attached to the Complaint.

missing Company property that was in your area of control." (Id. ex. 4.) The letter also stated that Farmer was prohibited from entering General Mills property. (Id.) On January 6, 2005, General Mills notified Farmer in a second letter that it had determined from the investigation that Farmer violated the work rule against theft contained in the CBA. (Id. ex. 5.) The letter also stated that Farmer's November 30, 2004 termination was being reclassified from a "voluntary separation – retirement" to "involuntary discharge – performance/conduct," and the Company was revoking the severance offer made to him. (Id.)

Five days later, on January 10, 2005, Farmer filed a Complaint against General Mills in the Hamilton County, Ohio Common Pleas Court. Farmer alleged three state law claims in the Complaint: two claims asserting a breach of contract regarding the severance benefits, and a defamation claim. On February 16, 2005, General Mills removed the action to this Court on the basis that Farmer's claims are subject to complete preemption by § 301 of the LMRA, and therefore, the Court has federal question subject matter jurisdiction. (Doc. #1.) General Mills now moves for dismissal of Farmer's claims, or for summary judgment, arguing that Farmer's claims are preempted and that he failed to exhaust the grievance procedures outlined in the CBA.

Following completion of the briefing on General Mills' motion, Farmer has supplemented the record with a journal entry from the Hamilton County Municipal Court. The journal entry states that Farmer was found not guilty of theft charges brought against him. The theft charges of which Farmer has been acquitted presumably relate to the theft allegations made by General Mills in this suit.

4

## II. LEGAL STANDARD

General Mills moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Rule 12(b) provides in relevant part as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b).  Both parties have submitted matters outside the Complaint for consideration including affidavits and the CBA.  Accordingly, this Court will treat the pending motion as a motion for summary judgment pursuant to Rule 56.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the movant has the burden of showing that no material facts are in dispute, and the Court must read the evidence, together with all inferences that can permissibly be drawn therefrom, in the light most favorable to the party opposing the motion.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The moving party may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. A genuine issue for trial exists when the evidence is not "so one-sided that one party must prevail as a matter of law." Id. at 252.

### III. ANALYSIS

#### A. Section 301 Preemption

Section 301(a) of the LMRA provides that "federal district courts have plenary jurisdiction, without regard to citizenship or amount in controversy, over 'suits for violation of contracts between an employer and a labor organization representing employees.'" Alongi v. Ford Motor Co., 386 F.3d 716, 723 (6th Cir. 2004) (quoting 29 U.S.C. § 185). The doctrine of complete preemption recognizes that the preemptive force of § 301 is so great that it authorizes removal of an action from state court that on the face of its complaint seeks relief only under state law. See id. at 724.

Section 301 preempts any state law claim arising from the breach of a collective bargaining agreement and any state law tort claim that is substantially dependent on, rather than only tangentially related to, the terms of a collective bargaining agreement. See Alongi, 386 F.3d at 724; Mattis v. Massman, 355 F.3d 902, 905 (6th Cir. 2004). Courts in the Sixth Circuit generally apply a two-step approach to determine whether § 301 complete preemption applies to a purported state law claim:

> First, we examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. Second, we ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both arises from state law and does not require contract

6

> interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, § 301 preemption is warranted.

Alongi, 386 F.3d at 724. The Sixth Circuit stated in 1991 that it has "not applied a cramped and narrow construction" of Supreme Court precedents interpreting § 301 and that it has "[not] limited § 301 pre-emption to cases where the precise meaning of precise words in the collective bargaining agreement is the crux of the state-based claim." Jones v. General Motors Corp., 939 F.2d 380, 383 (6th Cir. 1991). However, a defendant cannot inject a federal question into a state-based claim merely by asserting a defense that is intertwined with or dependent upon a collective bargaining agreement. See Alongi, 386 F.3d at 727; Fox v. Parker Hannifan Corp., 914 F.2d 795, 800 (6th Cir. 1990).

      **1.**     **Breach of Contract Claims**

In the first and third claims of the Complaint, Farmer alleges that he and General Mills entered into an irrevocable contract on August 12, 2004 when Farmer signed the voluntary resignation statement in exchange for a promise from General Mills to pay him approximately $52,000 in severance benefits. (Complaint ¶¶ 5-9, 14-16.) Farmer attached to the Complaint both his voluntary resignation statement and the Restructuring Agreement suggesting his belief that both documents comprise his contract with General Mills. Farmer's voluntary resignation statement incorporates the Restructuring Agreement when it discusses the "severance programs as agreed to by the Company and the Union in effects bargaining." (Resign. Stmt.) In the resignation statement, Farmer forfeited his employment and waived his right to recall and seniority – conditions expressly necessary to the receipt of severance benefits under paragraph 6 of the Restructuring Agreement. (Resign. Stmt.; Restr. Agrmt. ¶ 6.) Also, Farmer stated in his affidavit that he expected to receive severance benefits in the amount of $52,000 "under the

7

terms of the Restructuring Agreement" when his employment ended. (Farmer aff. ¶ 9; Restr. Agrmt. ¶ 4.) For all these reasons, Farmer's breach of contract claims implicate the Restructuring Agreement, a contract entered into between the Union and General Mills.

The Sixth Circuit has held that § 301 provides federal courts with jurisdiction over "any contract between an employer and a labor organization" and has defined such a contract to mean "any agreement significant to the maintenance of labor peace between the union and the employer." Beck v. Gannett Satellite Informational Network, Inc., No. 03-3103, 124 Fed. Appx. 311, 321, 2005 WL 221494 (6th Cir. Jan. 31, 2005) (internal quotation and citation omitted); see also Duran v. AT&T Corp., No. C-2-99-418, 2000 WL 33592869, at *5 (S.D. Ohio Aug. 31, 2000) (stating that § 301 encompasses suits based on other contracts between a union and an employer, in addition to suits based on CBAs). The Restructuring Agreement between the Union and General Mills is intended by its terms "to provide affected employees severance and other layoff benefits." (Restr. Agrmt.) The Court finds that the Restructuring Agreement standing alone is a contract significant to the maintenance of labor peace and that this Court has jurisdiction over claims that are substantially dependent upon it.[4]

Farmer's contract claims are based on his alleged right to severance benefits, which arises from the Restructuring Agreement, thus satisfying one prong of the preemption test stated in Alongi. See Alongi, 386 F.3d at 724. Farmer's breach of contract claims will require him to establish the existence of a binding contract, that he performed his obligations under the contract, that General Mills did not perform its obligations without legal excuse, and that he suffered

---

[4] Additionally, and as discussed in greater detail *infra* in the next section, the Restructuring Agreement cannot be fairly considered separate and apart from the CBA.

damages as a result of the breach. See Garofalo v. Chicago Title Ins. Co., 104 Ohio App. 3d 95, 108, 661 N.E.2d 218 (Ohio App. 1995); Doner v. Snapp, 98 Ohio App. 3d 597, 600, 649 N.E.2d 42 (Ohio App. 1994). Proof of these elements necessarily requires interpretation of the Restructuring Agreement.[5] See Alongi, 386 F.3d at 724. As both prongs of the preemption test are satisfied, the breach of contract claims are preempted by § 301 of the LMRA.

### 2. Defamation Claim

In the second claim of his Complaint, Farmer alleges that General Mills made false and defamatory statements accusing him of committing theft. (Complaint ¶¶ 11-13.) He alleges upon information and belief that General Mills "maliciously and intentionally circulated said information [that Farmer stole from the Company] amongst their employees and Plaintiff's former co-workers, all to Plaintiff's detriment." (Id. ¶ 12.) Again, this Court applies the two-prong preemption test set forth in Alongi to determine if the defamation claim is preempted.

First, Farmer's right not be defamed arises under Ohio law and is independent of any rights created by the Restructuring Agreement or the CBA. See Alongi, 386 F.3d at 724. Whether proving the claim requires interpretation of the Restructuring Agreement or the CBA presents a closer question. See id. The elements of a defamation claim in Ohio are as follows: "(1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory *per se* or caused special harm to the plaintiff." Gosden v. Louis, 116 Ohio App. 3d 195, 206, 687 N.E.2d 481 (Ohio App. 1996); see also Jacobs v. Budak, 156 Ohio

---

[5] Proof of whether General Mills had a legal excuse not to perform its contractual obligation may require an examination of the work rules stated in the CBA as well.

9

App.3d 160, 805 N.E.2d 111, at ¶ 50 (Ohio App. 2004) (same). Whether the statements were false and whether the Company had a qualified privilege to make the alleged defamatory statements likely will be at issue in this case.[6]

In DeCoe v. General Motors Corp., 32 F.3d 212 (6th Cir. 1994), the Sixth Circuit held that a defamation claim was preempted because Michigan law, like Ohio law, required the plaintiff to prove the defamatory publication was unprivileged. See id. at 217. The alleged defamatory statements in DeCoe concerned sexual harassment and the court noted that the collective bargaining agreement at issue imposed a duty on the defendants to identify and resolve sexual harassment claims. See id. The court stated that "it is difficult to understand how the plaintiff could establish that the challenged publications were unprivileged . . . without interpreting the CBA provisions that identified the duties imposed on all defendants." Id.; see also Potts v. Wilson, 54 Fed. Appx. 190, Slip Copy, 2002 WL 31845119, at *1-2 (6th Cir. Dec.

---

[6] The Supreme Court of Ohio quoted favorably from 50 American Jurisprudence 2d 698, Libel and Slander, Section 195 in explaining the meaning of a qualified privilege as follows:

> Conditional or qualified privilege is based on public policy. It does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege, and makes a showing of falsity and actual malice essential to the right of recovery. A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.

Hahn v. Kotten, 43 Ohio St. 2d 237, 244, 331 N.E.2d 713 (1975). To defeat a qualified privilege, a plaintiff must establish that the defamatory statements were made with "actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether they were false or not." See id. at syllabus ¶ 2.

10

17, 2002) (defamation claim preempted in an Ohio case); Fitzgerald v. Roadway Exp., Inc., 262 F. Supp. 2d 849, 856 (N.D.Ohio 2003) (stating that DeCoe applies under Ohio law).

The CBA at General Mills specifies that "[s]tealing from the Company or an employee" is punishable by a written warning or optional discharge, depending in part upon the seriousness of the infraction. (CBA § 20.) Disputes regarding violations of the work rules are subject to the grievance procedures in the CBA. (Id. § 6.) The employee, a union representative and various members of management participate during the multiple-step grievance process. (Id.) Therefore, the CBA provides General Mills with a right or privilege to communicate in proper circumstances regarding the subject of whether one of its employees has committed theft in violation of the work rules. Farmer's defamation claim will require an examination of the CBA to determine whether General Mills had a qualified privilege to communicate information about the alleged theft to its employees and Farmer's co-workers in the manner which Farmer alleges that it did. Therefore, preemption is warranted. See Alongi, 386 F.3d at 724 (setting preemption standard); see also DeCoe, 32 F.3d at 217 (similarly holding a defamation claim preempted).

**B.     Exhaustion of Contractual Remedies**

The finding that the breach of contract claims and the defamation claim are preempted by § 301 compels either that the claims be treated as § 301 claims, and resolved by applying uniform federal labor law principles, or be dismissed. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985) (holding that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law"); Smolarek v. Chrysler Corp., 879 F.2d 1326, 1329 (6th Cir. 1989)

11

(stating that state law-based claims dependent upon the meaning of a collective bargaining agreement are preempted and "and federal labor-law principles – necessarily uniform throughout the nation – must be employed to resolve the dispute"); Fitzgerald, 262 F. Supp. 2d at 859 (citing Lueck).

General Mills contends that Farmer's claims should be dismissed in this instance because Farmer did not exhaust his contractual remedies by following the CBA's grievance procedures before filing this lawsuit. National labor policy favors the arbitration of labor disputes. See United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). As a general rule, "federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by the employer and union as the mode of redress." Terwilliger v. Greyhound Lines, Inc., 882 F.2d 1033, 1038 (6th Cir. 1989) (emphasis in the original). A district court lacks jurisdiction to address a labor dispute until such mechanisms are exhausted. See Beck, 124 Fed. Appx. at 322. Nonetheless, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Warrior and Gulf Navigation Co., 363 U.S. at 582. There is a presumption of arbitrability where a CBA contains an arbitration clause. See AT&T Techs, Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986).

The CBA between General Mills and the Union contains a multi-step grievance and arbitration provision:

> Should differences arise between the Company and the Union as to the meaning and application of this Agreement, or should there be any dispute between employees and the management as to whether or not the Company is maintaining the wages, hours and working conditions herein established, any such dispute shall be handled in the following manner:

  * * * *

    4. If the grievance is not settled at step (3) above, . . . the Union may demand that the grievance be presented before an impartial arbitrator. . . .

(CBA § 6.)

  Farmer asserts that, as a voluntary retiree disputing his severance benefits, he is not required to follow the CBA's grievance procedure. He points out that the Restructuring Agreement does not expressly provide that disputes thereunder are to be grieved under the CBA provision. Further, he states that he was no longer a General Mills employee or a member of the Union after November 30, 2004, the date of his voluntary resignation from General Mills. Dennis Rodgers, President of the Union, avers on Farmer's behalf that the Union has not utilized the CBA grievance procedure in the past to resolve a retiree's dispute concerning retirement or voluntary severance benefits. (Rodgers aff. ¶¶ 5-6.)

  Farmer's and Rodgers' assertions do not compel a finding that the instant claims should not be grieved. It is true that the CBA's retirement provision expressly states that "controversies about these [retirement or insurance] plans or their administration shall not be subject to the grievance or arbitration provisions of this [CBA]." (CBA § 13.) However, this dispute is about severance benefits, not retirement benefits. The CBA does not exclude from the grievance procedures disputes concerning severance payment for certain types of involuntary layoffs. (CBA § 18.) Additionally, this dispute is about more than whether Farmer was an employee eligible for or entitled to voluntary severance benefits under the terms of the Restructuring Agreement. It is about whether General Mills had the authority to withdraw an offer of severance benefits made pursuant to the Restructuring Agreement upon a determination that Farmer had violated work rules contained in the CBA during his employment.

Moreover, the Restructuring Agreement cannot fairly be considered separate and apart from the CBA. The parties to the Restructuring Agreement and the CBA are the same. (Id.; Restr. Agrmt.) The Restructuring Agreement references the CBA explicitly in paragraphs 4 and 10. (Restr. Agrmt. ¶¶ 4, 10.) Additionally, other terms referenced in the Restructuring Agreement, such as seniority, recall rights, bidding, and "paper bumps," are devoid of context in the Restructuring Agreement and can be understood only by examining the meaning and use of those terms in the CBA. (Compare Restr. Agrmt. ¶¶ 2, 6, 10-13 with CBA §§ 10A, 10D, 10E and 11.) The Court interprets paragraph 4 of the Restructuring Agreement to create a severance benefit, relevant only to the layoff General Mills recently had declared, which supplements the severance benefits promised in section 18 of the CBA. (Id.)[7]

The Restructuring Agreement specifically excludes two issues from the grievance and arbitration procedures: (1) an employee's request for early release and (2) employment opportunities at other General Mills plants. (Restr. Agrmt. ¶¶ 7, 9.) The Court infers that the Restructuring Agreement excludes those issues from the grievance/arbitration procedure of the CBA because of the interrelationship between the agreements and the fact that the Restructuring Agreement does not provide its own grievance or arbitration procedures. The Court also infers that the other provisions of the Restructuring Agreement, such as those concerning severance pay, bidding, and paper bumps are subject to the grievance/arbitration procedure of the CBA because they are not specifically excluded. This conclusion is consistent with the fact that the

---

[7] Contrary to Farmer's assertion, the Restructuring Agreement severance benefit applies to both "volunteers and employees laid off involuntarily." (Restructuring Agrmt. ¶ 4.) It is analogous to the severance provision in the CBA to the extent that the CBA provides a lesser severance benefit for certain employees "permanently laid off as a result of a plant closing, elimination of a department, or technological improvements." (CBA § 18.)

analogous severance, bidding, and paper bump provisions of the CBA are subject to the grievance/arbitration procedure.

Finally, Farmer does not cite any legal authority in support of his contention that he could not grieve his dispute as a Union member under the CBA after his resignation from General Mills on November 30, 2004. His contention is inconsistent with the CBA. The CBA itself authorizes discharge for violation of certain work rules. (CBA § 20.) Farmer does not dispute that employees terminated for violating work rules in ordinary circumstances must grieve their disputes in lieu of seeking judicial relief. (Id. § 6.) Farmer's situation should not be viewed differently. The parties must resolve in the grievance and arbitration proceedings whether General Mills had authority to withdraw the severance benefits and, in effect, discharge Farmer for theft after he had resigned.

Accordingly, General Mills is entitled to summary judgment and Farmer's claims are dismissed because Farmer did not exhaust his contractual remedies.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment (doc. #6) is **GRANTED** and the Plaintiff's claims are **DISMISSED**.

IT IS SO ORDERED.

    s/Susan J. Dlott          
Susan J. Dlott
United States District Judge